304 S.E.2d 28

**STATE of West Virginia**

v.

**Allen C. BENNETT.**

**No. 15101.**

Supreme Court of Appeals of West Virginia.

March 30, 1983.

Rehearing Denied July 5, 1983.

S. Clark Woodroe, Asst. Atty. Gen., Charleston, for appellee.

Steven M. Askin, Askin & Burke, Martinsburg, for appellant.

PER CURIAM:

Allen C. Bennett appeals his conviction by a jury in the Circuit Court of Jefferson County for delivery of a controlled substance, for which he was sentenced to one to five years in the penitentiary. Upon careful examination of the record we find no significant error in the proceedings below, and affirm the judgment of the trial court.

The events leading to this charge occurred on June 25, 1977. Around 3:00 p.m. an undercover State trooper, T.L. Kirk, was taken by an unidentified informant to a trailer court near Charles Town. Kirk was introduced by the informant to the appellant, in the living room of a trailer there. After the informant left the room,

Kirk asked the appellant if he had any marijuana. The officer was shown a bag, and paid $35 for about an ounce.

On January 17, 1978 appellant was indicted by the Jefferson County Grand Jury for delivery of a controlled substance. He was arrested in the State of Florida on a minor charge in April, 1978 and waived extradition to West Virginia. After numerous hearings on pre-trial motions and discovery, trial before a jury was held on March 1–2, 1979.

The State presented two witnesses: Trooper Kirk, who testified to the transaction and identified the appellant; and Sgt. White, a chemist who identified the substance as marijuana. The appellant denied making the sale, and could not say where he was on the day in question. His roommate during that period testified that they did not live in a trailer; however, he did not know where the appellant was on that day, either. The jury found appellant guilty as charged.

Appellant now seeks reversal of this conviction, presenting thirteen assignments of error. He principally relies upon only eight: prejudicial pre-indictment delay; refusal to disclose the name of the confidential informant; the in-court identification; expert opinion as to the weight and identity of the substance; refusal to disclose the grand jury testimony of Trooper Kirk; improper jury selection; prosecutorial misconduct; and the court's recommendation that he serve a minimum three years of his one-to-five-year sentence. We find no merit in his remaining contentions,[1] and shall not address them.

## PRE–INDICTMENT DELAY

The appellant contends that he was prejudiced by the nearly seven-month delay in obtaining the indictment, in that he was unable to account for his whereabouts on the day in question. He maintains that the trial court should have required that the State explain its reasons for the delay, and should have sustained his motion to quash the indictment.

In *State ex rel. Leonard v. Hey*, W.Va., 269 S.E.2d 394 (1980), we held that a delay of eleven years between the crime and the indictment was presumptively prejudicial. In syllabus point 2, however, we said:

"The effect of less gross delays upon a defendant's due process rights must be determined by a trial court by weighing the reasons for delay against the impact of the delay upon the defendant's ability to defend himself."

In *State v. Ayers*, 168 W.Va. 137, 282 S.E.2d 876 (1981), we found that a four-month delay was not prejudicial, even though the defendant contended that he was unable to account for his activities on the night in question. In *State v. Maynard*, 170 W.Va. 40, 289 S.E.2d 714 (1982), the defendant was convicted of delivery of a controlled substance as the result of an undercover operation. We held that a three-month delay was reasonable, in light of the State's need to prevent the exposure of its undercover operatives and to analyze the evidence.

Finally, in our very recent case of *State v. Richey*, 171 W.Va. 342, 298 S.E.2d 879 (1982), the defendant claimed that he was prejudiced by a three-month delay, but failed to demonstrate any facts which would show such prejudice. We said, in syllabus point 1:

"The general rule is that where there is a delay between the commission of the crime and the return of the indictment or the arrest of the defendant, the burden rests initially upon the defendant to demonstrate how such delay has prejudiced his case if such delay is not *prima facie* excessive."

The irrevocable prejudice alleged by appellant below was that the State did not indict him until January of 1978, although the case could have been presented to the grand jury in September of 1977. During hearings, appellant made no attempt to

---

1. He also complains that he was denied full inquiry into Sgt. White's qualifications; that the informant was paid on a contingent fee basis; that he was denied a requested question on *voir dire;* that marijuana is improperly classified as a Schedule I controlled substance; and, the indictment failed to allege knowing or intentional delivery.

demonstrate actual prejudice from the delay. The court concluded that the delay was not prejudicial, *per se*, and overruled the motion, granting appellant leave to renew it if he could demonstrate prejudice at trial. The motion was not renewed.

■ We agree with the trial court that the seven-month delay was not *prima facie* excessive or prejudicial. The appellant did not meet his burden of going forward with evidence of prejudice; therefore, the State was not required to prove the reasonableness of the delay. The record reveals, however, that the appellant's indictment was the product of an extensive undercover operation, which continued for some time after his transaction with Kirk. Further, the State did not conduct its chemical analysis of the controlled substance until September 13, 1977. Under these circumstances, we conclude that any delay was reasonable, and that the trial court did not abuse its discretion in refusing to quash the indictment.

## DISCLOSURE OF THE INFORMANT

Prior to trial, the appellant by motion sought disclosure of the name of the confidential informant, so that he might interview him for possible use as a witness at trial. The State opposed the disclosure. After a hearing, the court found that the informant did not participate in the sale in any way, and that disclosure of his name would endanger him and undermine law enforcement efforts, and overruled the motion.

■ The appellant now contends that the court's refusal to order this disclosure violated his rights to due process and to compulsory process to secure the attendance of witnesses. We disagree.

"A common law privilege is accorded the government against the disclosure of the identity of an informant who has furnished information concerning violations of law to officers charged with enforcement of the law. However, disclosure may be required where the defendant's case could be jeopardized by nondisclosure." Syl. pt. 1, *State v. Tamez*, 169 W.Va. 382, 290 S.E.2d 14 (1982), *quoting*, syl. pt. 1, *State v. Haverty*, 165 W.Va. 164, 267 S.E.2d 727 (1980).

*See also* Syl. pt. 2, *State v. McCourt*, 168 W.Va. 231, 283 S.E.2d 918 (1981); *State ex rel. Lykens v. Bouchelle*, 122 W.Va. 498, 11 S.E.2d 119 (1940); *State v. Paun*, 109 W.Va. 606, 155 S.E. 656 (1930).

In *Tamez, supra*, we held that in ruling upon a motion for disclosure the trial court must balance the State's need for nondisclosure against its consequences upon the defendant's ability to receive a fair trial. "The resolution of the disclosure issue shall rest within the sound discretion of the trial court, and only an abuse of discretion will result in reversal." 169 W.Va. at 394, 290 S.E.2d at 21.

In *State v. Walls*, 170 W.Va. 419, 294 S.E.2d 272 (1982), we said that disclosure might be required where the informant was a direct participant in, or a material witness to, the crime. Appellant contends that he should have been allowed to interview the informant, as a potential witness. The transcript of the hearing on appellant's motion, however, shows that the informant merely introduced Kirk to the appellant, and did not witness nor participate in the sale. Therefore, appellant has not been deprived of a witness.

■ We find nothing in the record to indicate that appellant's defense would have been aided by the disclosure, or that it was necessary to ensure a fair trial. In support of the State's position, Trooper Kirk testified that disclosure of the informant's name would endanger his life and force the premature termination of several ongoing investigations. Under these circumstances, we conclude that the trial court did not err, and did not abuse its discretion in overruling appellant's motion for disclosure of the confidential informant.

## THE IN-COURT IDENTIFICATION

During a five-hour period on February 27, 1979, Trooper Kirk was twice shown a photographic array containing appellant's photograph. The appellant contends that the trial court should have granted his motion to suppress the in-court identification

based on this inherently suggestive out-of-court identification, and that the State did not show that Kirk had an independent reliable source to make the identification.

■ In the first place, we disagree with the appellant's characterization of the photo array as suggestive.[2] Further, as we held in syllabus point 5 of *State v. Harless*, 168 W.Va. 707, 285 S.E.2d 461 (1981):

"Even though there is an impermissibly suggestive pretrial photographic array, an in-court identification could be made if the identifying witness has a reliable basis for making an identification of the defendant which basis is independent of the tainted pretrial identification procedures."

■ Trooper Kirk testified that when he visited the trailer on the afternoon of June 25, 1977 the trailer was well lit, and he observed the appellant, face-to-face, for approximately 10 minutes. He said that his ability to identify the appellant was based solely upon his presence at the trailer on that day. We conclude that Trooper Kirk's observation of the appellant on the day of the marijuana sale provided an independent, reliable basis for making the identification, and that the trial court did not err in permitting the in-court identification of the appellant by Trooper Kirk.

THE CONTROLLED SUBSTANCE

The appellant also contends that the trial court erred in permitting Sgt. White to testify that the substance he examined was marijuana, and to state its weight. Appellant maintains that the chemical reagents used to identify the controlled substance were not themselves independently tested to assure their identity and purity, and that the State's reliance upon hearsay (labels) to identify them violated his right to due process and to confront his accusers. He also claims that Sgt. White should not have

been permitted to state how much marijuana he received, because the scales used to weigh it had not been tested, and he was unable to distinguish the stems and stalks from the portion of the plant that is illegal to possess. These contentions are without merit.

■ In *State v. Hood*, 155 W.Va. 337, 184 S.E.2d 334 (1971), we said the following foundation must be laid before test results are admissible:

"(1) That the testing device or equipment was in proper working order; (2) that the person giving and interpreting the test was properly qualified; (3) that the test was properly conducted; and (4) that there was compliance with any statutory requirements." 155 W.Va. at 342, 184 S.E.2d at 337.

*See also State v. Dyer*, 160 W.Va. 166, 233 S.E.2d 309, 310 (1977); *State v. Parks*, 161 W.Va. 511, 243 S.E.2d 848, 851 (1978). The record in this case shows that a careful and proper foundation was laid for the admission of White's opinion, and that the trial court correctly permitted him to testify that the substance was marijuana.

Appellant's various arguments about the weight of the substance are inapposite. The indictment charged that appellant:

"did unlawfully and feloniously deliver unto one T.L. Kirk a controlled substance classified in Schedule I, said controlled substance being a material, compound, mixture and preparation containing a quantity of marijuana...."

■ Since appellant was merely charged with delivery of "a quantity of" marijuana, the actual amount sold to Kirk is not material to his conviction under the indictment,[3] and he could not have been prejudiced by this testimony. His remaining attacks on the expert testimony are groundless.

---

**2.** The trial court found that Trooper Kirk was shown five photographs of young, white men in their late 20's or early 30's, all of whom had longish hair and mustaches, and all of whom were sufficiently close in resemblance to each other, so that the showing of the photographs to the officer was not suggestive. We agree.

**3.** *Cf. State v. Parks, supra* (where defendant was indicted for misdemeanor possession of less than 15 grams of marijuana).

## GRAND JURY TESTIMONY

Prior to trial, the appellant sought disclosure of the grand jury testimony of Trooper Kirk, based upon supposed differences between his testimony and information contained in the police report provided to the defense. The court denied disclosure, but granted appellant's oral motion to transcribe the grand jury minutes for the court's *in camera* inspection and for possible use by the defense at trial, should Kirk's testimony prove to be inconsistent with his grand jury testimony. The appellant did not object to this ruling.

At the conclusion of Kirk's trial testimony on cross-examination, defense counsel asked the court to review the transcript for inconsistencies. The court found no material discrepancy between the two testimonies, and did not release the grand jury transcript. The transcript was sealed by court order, and was transmitted to this Court for our review.

The appellant acknowledges that *W.Va. R.Cr.P.*, Rule 26.2 [1981], which permits the disclosure of grand jury testimony for impeachment purposes under certain circumstances, does not control the result in this case because it went into effect after appellant's conviction. He maintains, however, that he made a showing of "particularized need" under *Dennis v. United States*, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), which required the production of the grand jury transcript. *Dennis, supra,* dealt with the disclosure of federal grand jury testimony under federal rules and statutes, and has no application to our proceedings.

■ Even under the appellant's analysis, however, we find no error in the trial court's ruling. The "particularized need" discussed in *Dennis, supra,* includes "the use of the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like." *United States v. Procter & Gamble,* 356 U.S. 677, 683, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077 (1958); *See also Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 399, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1323, *reh. den.* 361 U.S. 855, 80 S.Ct. 42, 4 L.Ed.2d 94 (1959).

Upon careful examination of the very brief grand jury transcript in this case, we find no indication that it would be useful for any of these purposes. Although Kirk did not mention the confidential informant in his grand jury testimony, this is the only difference, and we agree with the trial court that it is not a material one. Even if denial of the transcript was error, we find that it could not have been prejudicial to appellant's defense, and does not require reversal of his conviction.

## EMPANELING THE JURY

When the clerk called the jury roll, four veniremen were not present. The court directed that their names be passed over and other names drawn, noting that there were 27 jurors present from which to draw a panel of 20. After *voir dire*, the parties exercised their strikes and the jury was sworn. The appellant then formally excepted to the panel, because of the unexplained absence of those jurors. He did not allege any prejudice, but said that he was entitled to a jury representing a cross-section of the community. The court found this objection to be speculative, and overruled the exception.

Appellant now contends that the trial court's actions in effect allowed the State six strikes from the panel, and violated Rule XII, Trial Court Rules for Trial Courts of Record, because the reasons for the jurors' absence were not noted. He argues that the court should have held a hearing to determine why those jurors did not attend. We find no merit in any of these contentions.

In syllabus point 2 of *State v. Emblem,* 46 W.Va. 326, 33 S.E. 223 (1899), we held:

"Where a panel of twenty jurors, free from exception, is completed from those in attendance for the trial of a criminal case, the objection that, previous to the making up of such panel, the court had excused from attendance certain jurors on the original venire for that term of the court is not tenable."

■ Appellant does not allege that a panel of twenty jurors, free from excep-

tion, was not completed from those in attendance; nor does he contend that the State did anything to procure the absence of the veniremen. Therefore, we fail to see how passing over an absent juror's name in calling the panel could inure to the benefit of the State. T.C.R., Rule XII provides for the exclusion of names of jurors who have neglected to attend, without requiring an examination into the reasons for their absence. Finally, we are of the opinion that the appellant's exception came too late:

> "A verdict will not be set aside for any irregularity in drawing, summoning or impaneling a jury unless properly objected to before the swearing of the jury or unless it is shown that the party making the objection was injured thereby." Syl. pt. 3, *State v. Hankish*, 147 W.Va. 123, 126 S.E.2d 42 (1962).

 Since the appellant has failed to show that he was injured by the omission of these jurors from the panel, we decline to disturb the judgment of the trial court.

## PROSECUTORIAL MISCONDUCT

Appellant contends that the trial court should have granted a mistrial due to repeated prejudicial comments by the prosecuting attorney. He complains of remarks during the examination of witnesses which allegedly referred to his criminal background, and implied that the defense had something to hide from the jury. Although the trial court denied appellant's motions for a mistrial, he did on each occasion give a cautionary instruction to the jury.

Appellant also complains of a comment by the prosecutor during closing argument that the defendant had not contradicted his expert witness' testimony. In the same sentence, however, the prosecutor also said that the defendant was not required to prove anything. Further, the court's charge to the jury told them that the defendant is not required to call any witnesses or present any evidence.

 "A judgment of conviction will not be reversed because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." Syl. pt. 5, *State v. Ocheltree*, 170 W.Va. 68, 289 S.E.2d 742 (1982). We cannot say that the prosecutor's comments clearly prejudiced appellant, or resulted in manifest injustice. Therefore, we shall not reverse his conviction on these grounds.

## THE RECOMMENDED SENTENCE

Finally, appellant says that the trial court "abused and misused" *W.Va.Code*, 61–11–16 [1941][4] by recommending that he serve three years of his one-to-five-year sentence. He states that nothing in his record justified this recommendation, and that the trial judge made no findings of fact or conclusions of law, thereby precluding any review of whether he abused his discretion.

 As a general rule, "[s]entences imposed by the trial court, if within statutory limits and if not based on some unpermissible factor, are not subject to appellate review." Syl. pt. 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982); *see also State v. Rogers*, 167 W.Va. 358, 280 S.E.2d 82, 84 (1981).

 The appellant's sentence is clearly within the statutory guidelines, and we find no evidence that the court's recommendation was based on an impermissible factor. Under these circumstances, the sentence is not reviewable.

For the foregoing reasons, the judgment of the Circuit Court of Jefferson County is affirmed.

Affirmed.

4. *W.Va.Code*, 61–11–16 [1941] provides, in pertinent part:
   "In imposing [an indeterminate] sentence, the judge may, however, designate a definite term, which designation may be considered by the board of probation and parole as the opinion of the judge under the facts and circumstances then appearing of the appropriate term recommended by him to be served by the person sentenced."
   This recommendation is not binding on the Board of Probation and Parole. *Hamrick v. Boles*, 229 F.Supp. 570 (N.D.W.Va.1964).