# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**Vs.)  No. 17-0262** (Gilmer County 16-F-7)

**Keith A.,**
**Defendant Below, Petitioner**

**FILED**

**May 11, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Keith A.[1], by counsel Robert P. Dunlap II, appeals the order of the Circuit Court of Gilmer County, entered on February 27, 2017, sentencing him to imprisonment in the state penitentiary for ten to twenty years for the conviction of each of three counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust, and imprisonment in the state penitentiary for five to twenty-five years for the conviction of each of three counts of sexual abuse in the first degree, with all sentences ordered to be served concurrently, and further ordering that he register as a sex offender for the remainder of his life. Respondent State of West Virginia appears by counsel Sarah B. Massey.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was indicted in the Circuit Court of Gilmer County on three counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust and three counts of sexual abuse in the first degree, all based on the State's allegations concerning petitioner's conduct toward his then ten-year-old biological daughter, P.A. Petitioner immediately moved the circuit court to dismiss the indictment based on his theory that the criminal prosecution is collaterally estopped by prior abuse and neglect proceedings arising from the same actions. The circuit court denied the motion to dismiss, and the case ultimately proceeded to trial before a jury, where the evidence, including the testimony of P.A. and her brother, showed that petitioner touched P.A.'s buttocks on multiple occasions. Petitioner was found guilty of all six counts and sentenced as set

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

forth above. Petitioner moved the circuit court to set aside the verdict, and the court denied his motion.

Petitioner asserts four assignments of error on appeal. He argues that: 1) the circuit court abused its discretion and was clearly erroneous in denying his motion to dismiss the indictment "because the charges arose from an abuse and neglect proceeding which collaterally estops pursuit of criminal charges for the same acts;" 2) the circuit court violated Rules 403 and 404(b) of the West Virginia Rules of Evidence by allowing testimony about disciplinary action taken by petitioner's employer in 2006; 3) the circuit court erred in denying petitioner's post-trial motion for judgment of acquittal based on insufficiency of the evidence; and 4) the circuit court allowed hearsay testimony by an investigating police officer concerning a text message that petitioner sent to his daughter, the victim, P.A.

We begin with petitioner's assertion that the circuit court erred in denying his motion to dismiss the indictment on collateral estoppel grounds because he was absolved of the abuse or neglect of P.A. in prior proceedings. "This Court's standard of review concerning a motion to dismiss an indictment is, generally, *de novo*. . . ." *State v. Grimes*, 226 W.Va. 411, 413, 701 S.E.2d 449, 451 (2009). Because petitioner argues that his criminal prosecution was barred by collateral estoppel, we are mindful that

> [c]ollateral estoppel will bar a claim if four conditions are met: (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*State v. Miller*, 194 W.Va. 3, 6, 459 S.E.2d 114, 117 (1995). Also, whether collateral estoppel applies in a particular case generally rests within the sound discretion of the trial court. Syl. Pt. 7, in part, *Conley v. Spillers*, 171 W.Va. 584, 301 S.E.2d 216 (1983).

Petitioner's assertion of collateral estoppel fails on several grounds. *See, e.g., In re: B.C.*, 233 W.Va. 130, 755 S.E.2d 664 (2014) and *Miller*, 194 W.Va. 3, 459 S.E.2d 114. Here, we particularly emphasize that the function of the abuse and neglect proceeding is fundamentally different from that of the criminal prosecution, and the issue previously decided is therefore not identical to the one now presented. The focus of an abuse and neglect proceeding is, always, the well-being of the child. *See* Syl. Pt. 1, in part, *In re Darla B.*, 175 W.Va. 137, 331 S.E.2d 868 (1985). In furtherance of that goal, such a proceeding is initiated when information is produced suggesting that a child is in need of protection. Future abuse and neglect proceedings involving the same parties are not precluded; such proceedings may be instituted when new information alerts the courts, again, that a child may require protection. In contrast, the sole focus of a criminal proceeding is on the guilt or innocence of the accused. The United States Supreme Court aptly explained, "[T]he purpose of a criminal court is not to provide a forum for the ascertainment of private rights. Rather it is to vindicate the public interest in the enforcement of the criminal law while at the same time safeguarding the rights of the individual defendant." *Standefer v. United States*, 447 U.S. 10, 25, 100 S.Ct. 1999, 2008, 64 L.Ed.2d 689 (1980).

2

Inasmuch as the purposes of the abuse and neglect proceedings and the criminal proceedings are fundamentally different, it is best that each proceed in its own due course, and not to the preclusion of the other such that the State would be faced with the decision of whether to shelter a child or to seek criminal justice.

Petitioner's second assignment of error asserts that the circuit court violated Rules 403 and 404(b) of the West Virginia Rules of Evidence by allowing prejudicial testimony concerning disciplinary action taken by petitioner's employer in 2006. Rule 403 provides, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Rule 404(b) provides, in part, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Petitioner asserts that he was prejudiced in violation of these rules because the circuit court allowed the investigating deputy and certain employees of petitioner's former employer to testify that petitioner was disciplined in his prior employment for accessing thousands of pornographic images at work. At least one of these witnesses testified that the images were "very close" to child pornography. The State argues that this evidence was intrinsic to the crime because it showed long-harbored desires that led petitioner to "groom" P.A. to carry out his fantasies. We disagree that petitioner's employment discipline for viewing pornography at inappropriate times and places is intrinsic to the crimes described herein.[2] We do however, find that the evidence would have been properly admitted to show petitioner's lustful disposition toward children, inasmuch as the investigating deputy testified at a pretrial hearing that the 2006 employment investigation revealed that petitioner had viewed various images "including father/daughter pornography." We have explained:

---

[2] We explained in *State v. LaRock*, 196 W.Va. 294, 312 n.29, 470 S.E.2d 613, 631 n.29 (1996):

> In determining whether the admissibility of evidence of "other bad acts" is governed by Rule 404(b), we first must determine if the evidence is "intrinsic" or "extrinsic." *See United States v. Williams*, 900 F.2d 823, 825 (5th Cir.1990): "'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." (Citations omitted). If the proffer fits in to the "intrinsic" category, evidence of other crimes should not be suppressed when those facts come in as *res gestae*—as part and parcel of the proof charged in the indictment. *See United States v. Masters*, 622 F.2d 83, 86 (4th Cir.1980)(stating evidence is admissible when it provides the context of the crime, "is necessary to a 'full presentation' of the case, or is . . . appropriate in order 'to complete the story of the crime on trial by proving its immediate context or the "res gestae"'"). (Citations omitted). . . .

Collateral acts or crimes may be introduced in cases involving child sexual assault or sexual abuse victims to show the perpetrator had a lustful disposition towards the victim, a lustful disposition towards children generally, or a lustful disposition to specific other children provided such evidence relates to incidents reasonably close in time to the incident(s) giving rise to the indictment. . . .

Syl. Pt. 2, in part, *State v. Edward Charles L.*, 183 W. Va. 641, 643, 398 S.E.2d 123, 125 (1990). We consider the evidence offered to show lustful disposition as follows:

[W]e review the trial court's decision to admit evidence pursuant to Rule 404(b) under an abuse of discretion standard. *State v. Bell*, 189 W.Va. 448, 453, 432 S.E.2d 532, 537 (1993); Syl. pt. 1, *State ex rel. Tinsman v. Hott*, 188 W.Va. 349, 424 S.E.2d 584 (1992). Our function on this appeal is limited to the inquiry as to whether the trial court acted in a way that was so arbitrary and irrational that it can be said to have abused its discretion. In reviewing the admission of Rule 404(b) evidence, we review it in the light most favorable to the party offering the evidence, in this case the prosecution, maximizing its probative value and minimizing its prejudicial effect.

*State v. McGinnis*, 193 W.Va. 147, 159, 455 S.E.2d 516, 528 (1994).  Under the limited facts before us, where the circuit court conducted a pretrial hearing to address the State's notice that it would present evidence of petitioner's prior employment discipline, we find that the circuit court did not abuse its discretion and there is no error.

Petitioner's third assignment of error is based on his assertion that the evidence was insufficient to support his conviction because there was no evidence that he touched P.A.'s buttocks for his sexual gratification, and gratification is an essential element of the crimes charged.[3]

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syl. Pt. 3, *State v. Guthrie*, 194 W. Va. 657, 663, 461 S.E.2d 163, 169 (1995). P.A. testified that after her parents' divorce, when she was about ten years old, petitioner began a pattern of whistling at her when she got out of the shower, that petitioner sometimes touched her buttocks

---

[3] *See* W. Va. Code § 61-8B-1.

though she asked him not to, and that he sometimes got into her bed wearing only his underwear and put his arms and legs around her. In addition, P.A.'s brother testified that he witnessed petitioner "groping" P.A.'s buttocks, often when petitioner was wearing only his underwear. Having been presented with this testimony, the jury easily could have found that petitioner touched his daughter in the manner that he did for his sexual gratification.

Finally, petitioner asserts that the circuit court improperly allowed hearsay testimony by an investigating police officer concerning a text message that petitioner sent to P.A. using the dysphemistic term "angry dragon," which alludes to a man's receiving fellatio and, at the moment of ejaculation, hitting his partner on the back of the head. "'The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion.' Syllabus point 10, *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955), *overruled on other grounds by State ex rel. R.L. v. Bedell*, 192 W.Va. 435, 452 S.E.2d 893 (1994)." Syl. Pt. 2, *State v. Doonan*, 220 W.Va. 8, 640 S.E.2d 71 (2006). We agree with the State that this did not constitute hearsay testimony because it was offered to show the reasonableness of the officer's actions in the investigatory course. "'The hearsay rule excludes hearsay evidence only when offered "as evidence of the truth of the matter asserted"; and does not operate against such testimony offered for the mere purpose of explaining previous conduct.' Syllabus Point 1, *State v. Paun*, 109 W.Va. 606, 155 S.E. 656 (1930)." Syl. Pt. 4, *State v. Morris*, 227 W.Va. 76, 78, 705 S.E.2d 583, 585 (2010). On this issue, petitioner briefly suggests that the officer's testimony was not the "best evidence" of the message that petitioner sent to P.A. The best evidence rule is found in Rule 1002 of the West Virginia Rules of Evidence: "An original writing, recording, or photograph is required in order to prove its content unless these rules or a state statute provides otherwise." However, Rule 1004 provides certain exceptions. Particular to this matter, the best evidence rule does not apply if the "originals are lost or destroyed, and not by the proponent acting in bad faith" or "[t]he writing, recording, or photograph is not closely related to a controlling issue." We note, first, that P.A. testified that petitioner deleted the text from her phone. The original text therefore was not available. We also note that the petitioner's sending of this vulgar text to P.A., though sufficient to prompt the officer to further investigation, was not closely related to the controlling issue of whether petitioner abused P.A.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 11, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

**DISSENTING:**

Justice Menis E. Ketchum

KETCHUM, Justice, dissenting and writing separately:

Prior to petitioner's trial, the State, without reference to any particular rule of evidence, filed a motion in limine informing the circuit court of its intent to introduce "res gestae" evidence of petitioner's employment suspension ten years prior, when the victim, petitioner's daughter, was about two years old. Petitioner opposed the motion on the grounds that evidence of his suspension was inadmissible under Rules 403 and 404(b) of the West Virginia Rules of Evidence. At a pretrial hearing, the State maintained that the evidence it would introduce was not evidence of a crime, wrong, or other act as described by Rule 404(b), but rather was intrinsic to the crimes with which petitioner was charged. The majority correctly determined that the connection, if any, between petitioner's suspension for downloading pornography while working and petitioner's later conduct was insufficient to establish a plan to "groom" his then-toddler daughter to fulfill his sexual fantasies. The majority erred, however, in stretching the bounds of evidence permitted by Rule 404(b)(2).

Evidence proffered at the pretrial hearing and the trial establishes that, around 2006, petitioner downloaded between 5,000 and 18,000 pornographic images using his colleague's work credentials. Resulting problems with the colleague's work system triggered the internal investigation and eventual suspension of petitioner by his employer, Federal Correctional Institution ("FCI"), a facility under the Federal Bureau of Prisons. Though the images downloaded by petitioner were reviewed by FCI's internal investigators, his supervisors, and, eventually, the county sheriff's deputy who investigated the crimes charged in this case, petitioner was not charged with possession of child pornography. When asked at the pretrial hearing whether any of the retrieved images constituted child pornography, the deputy responded, "No. . . . [Y]ou cannot tell by pictures of a person's age. There is young females, but you can't tell by looking at a picture how old somebody is." Of the thousands of images that led to petitioner's employment discipline, the investigating deputy identified two—possibly an image and its duplicate—that were captioned, "My Sexy Daughter." When asked whether those images depicted actual websites visited by petitioner or, instead, "pop-up" advertisements, the deputy responded, "It has a website at the bottom. It looks like an—it kind of looks like an advertisement to a website."

I continue to harken to the early days of my practice of law when "if [a defendant] was going to be convicted, then the person was going to be convicted based upon evidence showing the person's guilt of the specific offense charged in the indictment. Nothing more, nothing less." *State v. Bruffey*, 231 W. Va. 502, 517, 745 S.E.2d 540, 555 (2013) (Ketchum, J., dissenting) *quoting State v. Willett*, 223 W.Va. 394, 401, 674 S.E.2d 602, 609 (2009) (Ketchum, J., dissenting). That precept is particularly applicable to the present case. I am troubled that the circuit court abused its discretion in permitting prejudicial testimony and photographic evidence from multiple witnesses concerning petitioner's proclivity for viewing pornography at inappropriate times and places. At least one of these witnesses suggested that he was told that the

images were "very close" to child pornography, but the evidence adduced at the pretrial hearing does not appear to support that conclusion. Though petitioner's inclination is disturbing, if there was no evidence that the images downloaded by petitioner were child pornography, they are not evidence of a lustful disposition toward children, and must form no basis for petitioner's conviction.

I disagree with the majority, and I respectfully dissent.